UNITED STATES (BRACKETT v.). See Case No. 1,765.

---

## Case No. 14,635.

### UNITED STATES v. BRADBURY et al.

[2 Ware (Dav. 146), 150.] [1]

District Court, D. Maine. June Term, 1841.

PAYMENT — APPROPRIATION — BY WHOM MADE — RUNNING ACCOUNTS.

1. Where a debtor owing another several sums and on various accounts makes a payment, he may appropriate the payment to which debt he pleases. If he does not make the appropriation, the creditor may.

2. If neither party makes an appropriation at the time of payment, the law intervenes and makes the appropriation.

3. In open and running accounts, the law appropriates a partial payment to extinguish the oldest item in the account.

4. When an appropriation is made by a receipt, prima facie it is the creditor who makes it, because the language is his.

5. By the Roman law, when no appropriation of a payment is made by either party, the law applies it to the extinguishment of that debt which will be most beneficial to the debtor.

This was an action of debt on a bond given by William Bradbury, late postmaster at Levant, with sureties for the faithful performance of the duties of that office, dated Jan. 26, 1838. The bond was in the penal sum of $500, with the condition, among other things, that 'he shall pay the balance of all moneys that shall come to his hands for the postage of whatever is by law chargeable with postage, in a manner prescribed by the postmaster-general for the time being; and shall account with the United States for all moneys, bills, bonds, etc., which he shall receive for the use and benefit of the general post-office,' then to become void. It appeared in the case that Bradbury had been appointed postmaster as early as 1831. In January, 1838, in conformity with the act of congress of 1836, c. 270, § 37 [5 Stat. 88], he was required by the postmaster-general to give a new bond, which is the bond in question. At the time of its execution he was indebted, for arrearages of postage, to the amount of $465.60, and on the same day, when the bond was executed, he paid the sum of $227.91, and took a receipt therefor, in the following words: 'Mail route No. 93. Received this twenty-sixth day of January, 1838, from William Bradbury, postmaster at Levant, state of Maine, two hundred and twenty-seven dollars and ninety-one cents, being the amount due from him to the United States for the quarter ending Dec. 31,

[1] [Reported by Edward H. Daveis, Esq.]

1837, as shown by his account current, including all previous dues, back to October 1, 1836.' The receipt was printed, except the filling up with the name, date, and sum, and the last words, 'back to October 1, 1836,' which were added to the printed form with a pen. Bradbury remained postmaster until the close of the quarter, ending Sept. 30, 1838, when his account terminates. From January 1st to September 30th, he is charged with three quarters of postage, amounting to $157, and he is credited with three payments, made April 6, July 7, and October 8, meeting the three quarterly debits precisely in amount, excepting the first, when the payment is nine cents less than the debit. The balance due, on the whole account, is $237.78. The receipts taken for the last three quarters were in the same form with that above copied, with the exception of the additional words at the close, 'back to October.' The jury, under the direction of the court, returned a verdict for the penalty, and now a motion was made by the defendant's counsel to set aside the verdict and grant a new trial for misdirection of the court in matter of law.

Mr. Holmes, U. S. Dist. Atty.

C. S. Davies, for defendants.

WARE, District Judge. The instruction to the jury was, that when a debtor makes payment to a creditor, to whom he is indebted in several sums and on various accounts, as by note, bond, and book account, he has a right to direct to what account or what debt the payment shall be appropriated. This is a rule which arises out of the nature of the act. The payment is the act of the debtor, and he has a natural right to determine the quality of his own act, that is to make the appropriation of his own money. If the debtor pays generally on account, this right results to the creditor; he may then make the appropriation, and apply it to the payment of which debt he chooses. But the imputation, whether made by the debtor or creditor, must be made at the time of payment; in re presenti, hoc est statim, atque solutum est. Dig. 46, 3, 1. If not then made, it is not permitted to either party to go back afterwards and apply the payment, but the law intervenes and makes the application according to its own notions of justice, between the parties. In cases of open, running accounts, where there have been a number of successive charges and payments, from time to time, if neither of the parties has imputed these payments to extinguish any particular charges in the account, the law applies them to the payment of the debits in the order of time in which they stand in the account, each payment being appropriated to the extinguishment of the oldest charge on the debtor side of the account. Such was the direction to the jury, and, as a general rule, this is too well es-

tablished to be brought into doubt. U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720. Postmaster General v. Furber [Case No. 11,-308]; U. S. Wardwell [Id. 16,640]; Clayton's Case, 1 Mer. 572.

The Roman law, from which our rules for the imputation of general and unappropriated payments are in part derived, looks, generally, to the interest of the debtor, and is governed by what may be presumed to have been the will of a prudent and discreet man, if his attention had been particularly called to the subject; "quod verisimile videretur diligentem debitorem admonitu ita suum negotium gesturum fuisse." Dig. 46, 3, 97.

When there were several debts, and the payments were general, the law imputed it to a debt which the debtor owed on his own account, rather than to one for which he was liable as surety; to one which bore interest, before one which did not; to a debt secured by mortgage or by sureties, rather than to one which was not; to one having a penalty attached to it, rather than to one which had none, and, generally, to extinguish the debt which was most onerous to the debtor. It proceeded upon this principle, that, as the right of making the appropriation belongs of right to the debtor in the first instance, when none is made by either party and it is left to be made by the law, that ought to look to the supposed will of the debtor rather than that of the creditor. But if the debts were all of the same character, this preference was abandoned; for though the debtor, on some accounts, may have an interest in extinguishing the more recent rather than the more ancient debts, the law adopted the more equitable rule between the parties, and applied the payment to the oldest. "Si nihil eorum interveniat, vetustior contractus ante solvitur." Dig. 46, 3, 97, 5; Poth. Obl. Nos. 565, 571; 7 Toullier, Droit Civil, Nos. 173, 186. In this rule, therefore, the common and civil law agree, and the rule itself has its foundation in principles of natural justice. There was, then, no error in the instruction given to the jury in laying down the principles of law applicable to the general question, independent of the specialties belonging to the particular case.

The only question which can be considered as fairly open, is whether there is in this case such an appropriation of the payments made by the debtor, as will take it out of the common rule. It is contended that there was, and that this, as a fact, may be justly inferred from the circumstances under which the payments were made, and from the receipts which were taken. The bond bears date, Jan. 26, 1838. Bradbury remained postmaster for three quarters after; and at the end of each quarter paid the amount of postage which had accrued during the quarter, and took a receipt for the sum, which described it as 'being the amount due from him to the United States for the quarter ending,

etc., as shown by his account current, including all previous dues.' It is argued that this receipt makes an appropriation of the payment, first to extinguish the debt which accrued the past quarter, and that the excess only, if any there were, was to be applied toward paying the old balance; and that such was the intention of the debtor is a just inference from the fact that each payment was the precise amount of postage which had accrued during the preceding quarter. Undoubtedly it was the right of the defendant to have the money so applied, if he chose to make the application. But to carry this intention into effect it must be made known in a clear and intelligible manner, either by positive directions or by circumstances equivalent to a direct order. The fact that the payments were in each case precisely equal to the postage of the preceding quarters does undoubtedly raise a strong presumption that they were intended to be applied to the extinguishment of that part of the debt. In the case of Marryatts v. White, 2 Starkie, 101, Lord Ellenborough seemed to consider this circumstance as conclusive in a case which in its leading features resembles the present. That was an action on a promissory note, against the surety, given to secure the payment for flour to be afterwards delivered to the principal on the note. He was at the time indebted to the plaintiff for goods previously delivered. There was, therefore, an open running account. By the usage of trade a credit was allowed of three months, and if payment was sooner made, the debtor was entitled to a discount. Lord Ellenborough observed, 'that the payment of the exact amount of goods previously delivered is irrefragable evidence to show that the sum was intended in payment of those goods, and the payment of sums within the time allowed for discount, and on which discount has been allowed, affords a strong inference, in the absence of proof to the contrary, that it was made in relief of the surety.'

It will be observed that this case, in one important circumstance, differs from the case at bar. A discount was, by usage, allowed when payment was made before the expiration of the credit, and on some of the payments a discount was, in fact, allowed. This conclusively proved that the imputation was to the new, and not to the old debt; because if it had been applied to the old account no discount could have been claimed. Two circumstances here concurred to indicate the intention of the debtor, but one of which exists in the present case. That, it is true, Lord Ellenborough seems to have considered as conclusive, when standing alone and unconnected with any circumstances contributing either to confirm or weaken the presumption.

As a universal proposition, this will perhaps be found to be not wholly free from difficulty. But in the present case it does not stand alone; a receipt was taken, and an appropriation of the payment may be made by the form of the receipt. Manning v. Wes-

terne, 2 Vern. 607. Does this receipt, in its legal construction, make the appropriation which is contended for? In its terms it professes to be for the amount of the last quarter, including the previous dues. This form of expression seems to contemplate the whole debt due as one mass, and to impute the payment to the aggregate. The language of the receipt also implies that it is in satisfaction of the whole debt, the old balance, if any there was, as well as the last quarterly charge. It appears to me that the legal and proper import of the words renders it a payment on the general account; and if so, the law applies it to extinguish the oldest debits, leaving the last quarter unsatisfied.

But if the receipt admitted the construction for which the defendant's counsel contends, it would not relieve his case. When the appropriation of a payment is made by a receipt, it is by the creditor and not by the debtor that it is made. He executes the instrument, and the words are his. If the debtor objects to the appropriation, he may require a receipt in a different form, or he may by his own act impute the payment to the extinguishment of a different debt; for he is not bound, provided he objects, by the imputation of the creditor. But he must object at the time, and if he takes it without objection he will be considered as consenting to the application made by the creditor, and it will be binding upon him unless he has been overreached by fraud or surprise. Poth. Obl. No. 566, pt. 3, c. 1, art. 8. Now, if it had been the intention of the agent of the post-office to impute the payment to the last quarter, to the exclusion of the antecedent balance, and this had been done in terms ever so precise, it would not have been binding on the United States, because it would have been in direct opposition to the law. Nothing can be clearer both in principle and authority, than that a public agent, acting under the authority of law, cannot bind the government when he exceeds his powers, or when his act is repugnant to the law. Johnson v. U. S. [Case No. 7,419]. The agent who gave the receipt had no authority to impute the payment to any particular part of the debt, for this had been already done by law. By the act of July 2, 1836, c. 270, § 37, it is provided, when a new bond has been given by a postmaster, and there is an unpaid balance remaining against him, 'that payments made subsequent to the execution of the new bond by said postmaster, shall be applied first to discharge any balance which may be due on the old bond, unless he shall at the time of payment expressly direct them to be applied to the credit of his new account.' The construction of a receipt is therefore wholly immaterial, unless it be shown by other evidence that a receipt in this form was specially required by the debtor, or that the appropriation might be considered as his act. But there was no evidence of this kind in the case. In whatever point of view this case is considered, it appears to me that judgment must be for the United States.

Another question remains, and that is, for what sum the parties on this bond are liable. The whole balance due and now claimed is $227.78. If the payment made at the time when the bond was executed be imputed upon the debt which accrued back to October, 1836, then the whole of the old balance will be of more than two years standing, and by the act of congress of 1825, c. 275, § 3,—Story's Ed. [4 Stat. 103],—the sureties of a postmaster are not liable for any default which occurred more than two years before the suit was brought. This period of limitation had passed before the date of the writ. The receipt expressly imputes the payment upon that part of the debt. But, as has been already observed, when an appropriation is made by a receipt, it is, prima facie, the act of the creditor. It can only be construed to be the act of the debtor when it appears by other evidence that he required the receipt in that particular form. But if it be taken as the act of the agent of the general post-office, he had no authority to make the appropriation. It was already made by a general law. The bond, however, by its terms is made to operate only prospectively. The condition is that 'if the said Bradbury shall well and truly execute the duties of said office, etc., and shall pay the balance of all moneys that shall come into his hands, etc., and shall faithfully account with the United States for all moneys, etc., which he shall receive, etc.' The bond, therefore, can have no retroactive effect to render the parties liable for antecedent defaults. Now, the whole amount of postage which accrued, after the date of the bond, was $157, and for this amount, and this only, are the parties in this action liable.

Judgment for the penalty, and execution to be issued for $157 and interest from the date of the service of the writ, December 31, 1839.